JORDAN MARSH Co. *v.* UNITED STATES

No. 7662.— Invoices dated Belfast, Ireland, November 7, 1935, etc.
Certified November 8, 1935, etc.
Entered at Boston, Mass., November 20, 1935, etc.
Entry No. 6289/1, etc.

Third Division, Appellate Term

(Decided February 9, 1949)

*Joseph F. Lockett* for the appellant.

*David N. Edelstein*, Assistant Attorney General (*Daniel I. Auster*, special attorney), for the appellee.

Before CLINE, EKWALL, and JOHNSON, Judges

JOHNSON, Judge: These appeals, listed in schedule "A", attached hereto and made a part hereof, were filed on behalf of the importer for a review of the decision rendered in reappraisement by the trial court (Reap. Dec. 7240), where the values found by the appraiser were upheld.

The merchandise, upon which the appraiser had found the values to be higher than the invoiced values, consists of Irish linen damask table covers and napkins, of various sizes, manufactured and shipped by the Broadway Damask Co., Ltd., and the York Street Flax Spinning Co., Ltd., of Belfast, Ireland, to the plaintiff herein. The appeals covering the linens shipped by the York Street Flax Spinning Co., Ltd., however, were abandoned. The linens in question are of a type known as crested linens, which have interwoven therein the personal crest of the ultimate consumer. The ultimate consumer of the linens at issue is the Baltimore & Ohio Railroad Co.

The evidence discloses that the appraiser advanced the invoiced values for the reason that he had knowledge before him that similar merchandise had been exported to the United States during the same period at higher prices. The plaintiff contends, however, that the linens used by the appraiser in determining the appraised value were not "similar" for the particular reason that linens bearing the crest of other railroads, or of hotels, or merely a floral crest, could not become commercially interchangeable with linens bearing the personal crest of the Baltimore and Ohio Railroad.

Under the provisions of the Tariff Act of 1930, section 402, as amended by the Customs Administrative Act of 1938, for the purposes of fixing a standard with which to measure the values of merchandise imported into the United States, the Congress has established five bases of value to be applied—as follows:

(1) The foreign value or the export value, whichever is higher;

(2) If the appraiser determines that neither the foreign value nor the export value can be satisfactorily ascertained, then the United States value;

(3) If the appraiser determines that neither the foreign value, the export value, nor the United States value can be satisfactorily ascertained, then the cost of production;

(4) In the case of an article with respect to which there is in effect under section 336 a rate of duty based upon the American selling price of a domestic article, then the American selling price of such article.

The procedure for the determination of such values is announced in subsections (c), (d), (e), (f), and (g) of section 402. At the trial below, however, counsel for the Government conceded that there was no United States value and also no foreign value involved for the reason that merchandise bearing the crest of the Baltimore and Ohio Railroad was not resold by the railroad either abroad or in the United States. Therefore, it becomes unnecessary to set out the methods enacted except for the determination of the export value and the value based upon the cost of production. Section 402, *supra*, as to such values, provides as follows:

(d) EXPORT VALUE.—The export value of imported merchandise shall be the market value or the price, at the time of exportation of such merchandise to the United States, at which such or similar merchandise is freely offered for sale to all purchasers in the principal markets of the country from which exported, in the usual wholesale quantities and in the ordinary course of trade, for exportation to the United States, plus, when not included in such price, the cost of all containers and coverings of whatever nature, and all other costs, charges, and expenses incident to placing the merchandise in condition, packed ready for shipment to the United States.

\* \* \* \* \* \* \*

(f) COST OF PRODUCTION.—For the purpose of this title the cost of production of imported merchandise shall be the sum of—

(1) The cost of materials of, and of fabrication, manipulation, or other process employed in manufacturing or producing such or similar merchandise, at a time preceding the date of exportation of the particular merchandise under consideration which would ordinarily permit the manufacture or production of the particular merchandise under consideration in the usual course of business;

(2) The usual general expenses (not less than 10 per centum of such cost) in the case of such or similar merchandise;

(3) The cost of all containers and coverings of whatever nature, and all other costs, charges, and expenses incident to placing the particular merchandise under consideration in condition, packed ready for shipment to the United States; and

(4) An addition for profit (not less than 8 per centum of the sum of the amounts found under paragraphs (1) and (2) of this subdivision) equal to the profit which ordinarily is added, in the case of merchandise of the same general character as the particular merchandise under consideration, by manufacturers or producers in the country of manufacture or production who are engaged in the production or manufacture of merchandise of the same class or kind.

Since, under the plaintiff's theory, an export value cannot be found, and, in the absence of a foreign or United States value for the merchandise, it is further contended that resort to the cost of production is the only alternative by which a value can be legally determined.

In an effort to establish the proper values for the merchandise, counsel for the plaintiff introduced in evidence an affidavit signed by the costing clerk of the shipper, to which were attached figures showing the cost of production of the various items. The affidavit was

admitted in evidence as exhibit 1. One of the napkins imported was marked in evidence as illustrative exhibit A. In the center of a floral design there appears the design of the White House. Surrounding the design appear the words "Baltimore and Ohio Railroad." Running through both of the foregoing are the words "Dining car service."

In rebuttal of the evidence produced by the plaintiff, the Government introduced four reports explanatory of the entire situation. Report of a Treasury representative, dated February 24, 1936, together with exhibits, was admitted as collective exhibit 2. An additional report, dated April 17, 1936, together with exhibits, was admitted in evidence as collective exhibit 3. An illustrative exhibit, prepared by Examiner Allan of New York from the reports of the Treasury representatives, consisting of an explanation of the manner in which the Government arrived at certain figures with respect to the cost of production, was admitted in evidence as collective illustrative exhibit B. Other Treasury representatives' reports, together with exhibits, were marked in evidence as collective exhibits 4 and 5. No additional evidence was offered by either the plaintiff or the Government.

Counsel for the Government contends that commercial interchangeability is not an essential element of similarity; and that inasmuch as the plaintiff has failed to establish the appraised export values to be erroneous on the theory of being based upon items that are not similar, such values as returned by the appraiser should stand as the proper value. Moreover, it is also contended that even though there were no values other than such as are derived from the cost-of-production formula, the evidence of plaintiff as to the cost of production is defective in that a profit in accordance with the statutory formula has not been established. And further, that the cost of production of merchandise of the same class or kind, including the profit ordinarily added, as set out by the reports of the special agents, is represented by values, which, in each instance, are higher than the values returned by the appraiser.

We have considered carefully the affidavit of the costing clerk of the exporting firm and the various reports of Government agents. We are of the opinion that the profit which the exporter should have made, as shown in the affidavit, would not serve as a substitute for the profit required by the statute. Consequently, the affidavit of the costing clerk fails to establish the cost of production as defined in the statute. As to the export value of these particular linens, the costing clerk had no knowledge whether or not similar merchandise had been exported by other shippers of linens in the market of exportation.

From a study of the many cost sheets submitted with the reports of the special agents, we are further of the opinion that the costs of production of linens of the same class or kind, which need not neces-

sarily be crested linens, at a time preceding the dates of exportation of the particular merchandise in question, were invariably higher than the values returned by the appraiser as representing the export values. The reason for this also clearly appears. Crested linens were supplied in unusually large quantities and at a less cost than uncrested linens, thus enabling looms to be kept in operation during slack periods.

The trial court in making a return of value relied largely upon the importer's failure to produce evidence sufficient to overcome the presumption of correctness of the appraiser's action insofar as an export value was concerned, and in the absence of any other statutory value being established. We agree with that viewpoint.

Counsel for the plaintiff, however, relied principally upon a decision of this court in the case of *United States* v. *Canadian National Railways*, 11 Cust. Ct. 365, Reap. Dec. 5901, a case which was not appealed to the division for review. There, orders for crested linens had been placed with Canadian firms who contracted for the manufacture thereof in Ireland. The articles were invoiced, entered, and appraised at a Canadian value. The collector filed an appeal for a reappraisement, contending that there were higher export values for the goods. The acting appraiser who made the appraisement testified that the goods were appraised upon the basis of the cost of production on account of the absence of a foreign, export, or United States value, and that the nearest approach to a cost-of-production value he could obtain was the price of the goods in Montreal, which were the invoice and entered prices, approved by the appraiser as the value for dutiable purposes. In that case, the Government was unable to establish any other value for the merchandise and therefore the value adopted by the appraiser as representing the cost of production, in the absence of any other evidence of value, was held to be the presumptively correct value of the merchandise.

It is true that the court there observed in its opinion that inasmuch as the crested linens were not commercially interchangeable, according to the testimony of the acting appraiser, they would fail to come within the definitions of "similar merchandise." However, such observation was not necessary to the decision in view of the plaintiff's failure to present evidence sufficient to overcome the presumption of correctness of the appraiser's finding. In fact, had the court considered the case of *United States* v. *Thomas & Co.*, 21 C. C. P. A. 254, T. D. 46788, which was not cited by the trial court in that case, the *obiter dictum* as to the interchangeability affecting similarity probably would not have been made.

It seems fairly clear in the *Thomas* case, *supra*, the appellate court, in determining whether or not goods, are "similar," is inclined to disregard the test of commercial interchangeability in the event goods

are made of approximately the same materials, adapted to substantially the same uses, and possess an equality in value and similarity in cost of production. In other words, the doctrine of commercial interchangeability was there held not to be an indispensable element in determining whether or not articles were "similar" for appraisement purposes. The appellate court stated:

\* \* \* Whether goods sold in the foreign market are similar to those imported cannot always depend upon whether the foreign goods would be accepted as a compliance with an order by the user of the imported goods.

As a matter of fact there is no evidence before the court tending to establish that uncrested linens would not have served the purpose of the Baltimore and Ohio Railroad in their dining car service.

After a careful consideration of the record below, we conclude that the trial court committed no errors which would justify a reversal of the judgment rendered. We therefore make the following findings of fact:

1. That the merchandise herein consisted of linens bearing the personal crest of the Baltimore and Ohio Railroad woven therein.

2. That the evidence fails to establish whether or not linens bearing the personal crest of the ultimate consumer woven therein present a similarity to uncrested linens, or linens with a crest other than personal to a particular consumer, when commensurate in value and use, and constructed of similar materials.

3. That the linens in question are dutiable upon the basis of the export value.

4. That there is no foreign or United States value.

5. That the export value of the merchandise the subject of these reappraisements, in the absence of evidence to establish any other value, is the value returned by the appraiser.

We hold as a matter of law that the proper export values of the linens in question are represented by the values returned by the appraiser.

Judgment will be rendered accordingly, affirming the judgment of the trial court.